IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANDREW D. CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-1071-R |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income payments (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings.

### I. Procedural Background

Plaintiff filed his application for SSI on July 22, 2010. The Social Security Administration denied his application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-

22). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     Plaintiff's Educational, Mental and Psychological History

Plaintiff is classified as a person of younger age, only 27 years old on the date of onset of his allegedly disabling impairments. A record from the Northwest Center for Behavioral Health reflects that Plaintiff reported to Dr. Ray Cordry that he has earned a high school diploma and an Associate's Degree from Tulsa Community College. (TR. 325).

The only educational record in the file is the results of an Occupational Therapy Evaluation from the Pawhuska Public Schools. Plaintiff was seventeen years old at the time of testing. (TR. 163-165). The examiner, Sue Goza, reported her concerns based on her observations during testing: difficulty with grasp and release; awkward pencil grasp; cannot manipulate scissors to cut; difficulty making smooth lines; inability to organize job materials, difficulty copying written work from the board; omits words from sentences; difficulty with depth perception; difficulty in completing written work; avoids written work when possible; difficulty completing written test; may play with a variety of objects at his desk/fidgets. (TR. 163).

On the Beery-Buktenica Developmental Test of Visual Motor Integration, Plaintiff was asked to copy designs in a developmental sequence. Plaintiff's test results indicated an age equivalence of 5 years and 10 months—a 12 year delay. On the Motor Free Visual Perceptual Test Revised, Plaintiff was asked to say or point to the correct answer.

Plaintiff's score indicated a Perceptual Age of 9 years, an eight year delay. On the Children's Handwriting Evaluation Scale, Plaintiff was asked to copy a paragraph in a time limit of two minutes. The results indicated his hand writing was very poor for eighth grade. The examiner noted that Plaintiff had a hard time signing his name in cursive. (TR. 163-164).

On February 24, 2003, Plaintiff slipped on the ice and broke his right ankle. The next day he underwent surgery for the trimalleolar fraction. (TR. 223). In February 2011, Plaintiff underwent a physical examination by a consultative examiner, Bill Buffington, M.D. (TR. 271-273). Plaintiff's chief complaint was back pain, but Plaintiff also reported, among other things, vision problems, gastric distress, and difficulty concentrating. Dr. Buffington reported Plaintiff's vision was corrected by glasses to 20/70. (TR. 272). Straight leg raising was negative for sciatica, but Plaintiff experienced pain upon flexion and extension. Plaintiff was unable to perform heel and toe walking because of pain in his ankle. (TR. 277) Plaintiff's equilibrium was described as poor. Dr. Buffington found Plaintiff's feet to be sensitive to touch (hyperesthesia). He diagnosed Plaintiff with neuropathy. (TR. 272).

Also in February 2011, Plaintiff also underwent a consultative psychological examination. (TR. 266-269). Richard D. Kahoe, Ph.D., found Plaintiff's attention and concentration skills to be mildly impaired. He estimated Plaintiff's intellectual ability to be in the low-average range. Dr. Kahoe found Plaintiff's abstracting ability to be impaired and his computational skills limited to one-digit numbers. (TR. 267). Plaintiff

was diagnosed with Panic Disorder With Agoraphobia; Mood Disorder; Attention Deficit/Hyperactivity Disorder (provisional); and Compulsive and avoidant personality features. (TR. 269).

Plaintiff's treating physician at the Northwest Center for Behavioral Health, Dr. Cordry, submitted a Mental Medical Source Statement. Of the twenty statements used to assess understanding and memory, sustained concentration and persistence, social interactions, and adaptation, Ray Cordry, D.O., assessed Plaintiff as markedly limited in twelve. (TR. 328-330).

### III. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the date his application was filed. (TR. 12). At step two, the ALJ determined that Plaintiff has severe impairments consisting of history of fibular and tibia fractures of the right ankle, "alleged peripheral neuropathy,"[1] Charcot-Marie-Tooth syndrome, ADHD, mood disorder, panic disorder with mild to moderate agoraphobia, and personality disorder. (TR. 12). At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 12).

---

[1] As the medical records reveal, Plaintiff was diagnosed with neuropathy by the Agency's own consultative medical examiner. (TR. 272). The ALJ stated that he was giving "controlling weight to the opinions of the consultative examiners and medical consultants of the State Disability Determination Services (DDS). (TR. 20), in which case the fact that Plaintiff suffers from neuropathy is not simply "alleged." It has been diagnosed by a physician whose opinion was given "controlling weight."

4

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for no more than the occasional lifting of up to 20 pounds, no more than frequent lifting and carrying up to ten pounds; standing/walking 6 hours out of an 8-hour workday; sitting 6 hours out of an 8-hour workday; all postural activities occasionally; no exposure to temperature or humidity extremes but able to understand, remember, and carryout simple written over oral instructions consistent with unskilled work that is repetitive and routine in nature and able to relate and interact with coworkers and supervisors on a work-related basis only, with no or minimal interaction with the general public.

(TR. 14).

At the second phase of step four, the ALJ related the exertional requirements of Plaintiff's past relevant work as a customer service representative, fast food worker, lawn mower, dishwasher, grocery bagger, and animal caretaker. In the third phase of step four, the ALJ compared the requirements of Plaintiff's past relevant work to the previously formulated RFC and determined that Plaintiff cannot return to his past relevant work. (TR. 21).

At the fifth step of the sequential evaluation, the ALJ relied on the testimony of a vocational expert (VE) and determined that Plaintiff can perform other work existing in sufficient numbers in the national economy. The VE identified four such jobs: merchandise worker; label coder; microfilm document preparer; and tube operator. (TR. 22). Thus, the ALJ determined that Plaintiff is not disabled.

## IV. Issues Considered

Of the issues raised in Plaintiff's brief, two require remand. The ALJ erred in failing to include all of Plaintiff's impairments in the RFC, resulting in a faulty step-five determination that is not supported by substantial evidence. Additionally, the ALJ erred in failing to include all impairments in his hypothetical questions to the VE.

### Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## V. Analysis

Plaintiff contends the ALJ erred in failing to consider all of Plaintiff's limitations at the fifth step of the sequential evaluation. Essentially, this issue challenges the ALJ's failure to include all impairments in his RFC assessment. Plaintiff's point is well-taken.

In determining the scope of a claimant's RFC, the ALJ's assessment must "consider all of [a claimant's] medically determinable impairments ..., including [his] medically determinable impairments that are not severe." 20 C.F.R. § 416.945. An impairment is medically determinable if it is "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908. "Symptoms" are defined as a claimant's own

6

subjective complaints, "signs" as observable "anatomical, physiological, or psychological abnormalities which ... must be shown by medically acceptable clinical diagnostic techniques," and "laboratory findings" as "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 416.928.

The ALJ did not acknowledge Plaintiff's documented visual disturbances, including difficulty with visual scanning and visual attention. (TR. 163-164; 271-277; 297-304). The ALJ also ignored Plaintiff's documented inability to effectively use his hands to grasp and release objects. At seventeen, Plaintiff could not manipulate scissors to cut and had difficulty grasping and using a pencil. (TR. 163-164). Nothing in the record supports a conclusion that these impairments improved with age.

Plaintiff further contends that the ALJ erred in failing to include all his impairments in the hypothetical questions to the VE. It is well settled that the hypothetical questions to the VE "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted).

The first two hypothetical questions to the VE limited the Plaintiff to light or sedentary work. (TR. 48-51). The ALJ's hypothetical questions assumed the

hypothetical individual "had good ability to read and write and use numbers." (TR. 49). Evidence in the record, however, is to the contrary. The record of the occupational therapy evaluation reveals that Plaintiff's handwriting was very poor, that he held a pencil awkwardly, that he could not grasp and release effectively, and that he had difficulty learning new motor skills. (TR. 163). Moreover, the report of the mental status examination by a state agency examiner demonstrates Plaintiff's poor computational skills, limited to one-digit problems. (TR. 267). In the third hypothetical question, the ALJ asked the VE to consider a hypothetical person with five of the eleven marked limitations[2] noted in Exhibit 13F, a Mental Medical Source Statement completed by Plaintiff's treating physician, Dr. Ray Cordry. (TR. 51; 328-330). The VE testified that a person with these limitations could not secure and sustain employment. (TR. 51). On remand, the ALJ should develop the record with an up-to-date occupational evaluation. The ALJ should also include all of Plaintiff's supported impairments in his RFC and his hypothetical questions to the VE.

**RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner

---

[2] The five specific limitations, all designated as marked limitations, were the ability to remember locations and work-like procedures; the ability to understand and remember short and simple instructions; the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number and length of rest periods. (TR. 328-329).

should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 3, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on January 20, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE